Illinois Protestant Children's Home, An Illinois Not-For-Profit Corporation, Plaintiff-Appellant, v. Department of Public Welfare of State of Illinois, Otto Bettag, Director, Clark Miley, Hearing Officer, Defendants-Appellees.

Gen. No. 48,312.

First District, First Division.

May 7, 1962.

Rehearing denied May 28, 1962.

Eugene A. Tappy, of Chicago, for appellant.

William G. Clark, Attorney General of the State of Illinois (William C. Wines, Raymond S. Sarnow and

A. Zola Groves, Assistant Attorneys General, and Philip J. Murphy, Special Assistant Attorney General, of counsel), for appellees.

MR. JUSTICE BURMAN delivered the opinion of the court.

Plaintiff, the Illinois Protestant Children's Home (hereinafter referred to as the Home), appeals from a judgment order of the Circuit Court affirming the findings and decision of the Department of Public Welfare which denied the renewal of plaintiff's license to operate as a child welfare agency.

This matter originated with the Department's issuance of notice to the Home, in accordance with § 299 of "an Act to provide for the licensing and supervision of child welfare agencies and family homes . . ." [Ill Rev Stats c 23, § 299 (1955)], that the Home's license which expired on March 9, 1956, would not be renewed. The Home subsequently requested from the Department a statement of charges and a public hearing, to which it is entitled under § 299(e). The Department complied, furnishing the Home with a written statement of twenty-seven charges. Extensive public hearings, with Clark Miley as the hearing officer, were conducted during 1956 and early 1957. With the Department introducing four witnesses and the Home thirty, the transcribed evidence (including numerous exhibits) consisted of 2874 pages. At the conclusion the hearing officer recommended that the Home's license not be renewed, which recommendation was adopted by the Department.

As authorized in the Administrative Review Act the Home filed a complaint in the Circuit Court and received a hearing focused upon the record of proceedings before the Department. [Ill Rev Stats c 110, §§ 265, 274 (1955)]. On July 5, 1960, the Circuit Court entered an order which, after reciting that the court reviewed all the proceedings before the Department and

307

heard oral argument, affirmed the Department's decision.

■ The Home contends that the findings and conclusions of the Department and the Circuit Court are against the manifest weight of the evidence. In entertaining this question it is important that we describe our precise function as a reviewing court. Section 11 of the Administrative Review Act [Ill Rev Stats c 110, § 274 (1955)] provides: "the findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." In Parker v. Department of Registration and Education, 5 Ill2d 288, 294, 125 NE2d 494, the effect of the statutory presumption was thus explained: "the court has a judicial function comparable to the issue at law as to whether there is competent evidence to support a judgment of a lower court. Harrison v. Civil Service Commission, 1 Ill2d 137, 115 NE2d 521." In accordance with this directive we turn to an examination of the record.

The Home, an Illinois Corporation not-for-profit, is located at 5017 Ellis Avenue, Chicago. It has been licensed during the entire period that the State Licensing Act has been in effect. Mrs. L. W. Budd, president of the Home since 1928, was present during the hearings before the Department and was represented by counsel. The record reveals that the Department withdrew on its own motion seven of the charges filed in the written statement. The hearing officer determined that seven of the charges were sustained by the evidence, that evidence insufficient to sustain three additional charges nevertheless carried probative value upon the ultimate question of revocation, and that the remaining ten charges should be dismissed. Briefly summarized, the sustained charges reveal that the Home failed to file with the Department within a reasonable time standard reports required by law and

certain special reports orally requested by the Department; that it failed to file reports and information required by the Family Court of Cook County; that it failed to maintain a staff sufficient to supervise the children adequately at all times; and that it failed to maintain personnel records which would indicate employee fitness, and financial records necessary for the Department's appraisal of prospective stability of operations.

█ We think it significant to note that the entire Act governing licensing and supervision of child welfare agencies imports a liberal delegation of authority, discretion and responsibility to the Department of Public Welfare. The provisions of that Act [Ill Rev Stats c 23, § 299 (1955)] here involved read:

(b). . . .

The Department shall prescribe and publish minimum standards for the licensing of agencies and homes under this Act.

(e) The Department may revoke or refuse to renew any license of a child welfare agency or family home in case the licensee shall:

(1) substantially and wilfully violate any provisions of such license;

(2) intentionally make any false statement or report to the department; or

(3) be no longer qualified to receive or care for children under the terms of this act.

(f) Every child welfare agency or family home shall keep such records regarding each child in its control and care as the Department may prescribe and shall report to the Department, whenever called for, upon forms prescribed by the Department such facts as it may require with reference to such children. . . .

■ Nora E. English, supervisor of institutions and agencies in the child welfare division of the Department, testified that although she had recommended renewal of the Home's license for the years 1953, 1954 and 1955, she refused to do so for the year 1956. Explaining that routine reports concerning children received and discharged are required to be filed by the Home, she testified that from May to October, 1955, such reports were not filed despite numerous reminders and requests from the Department, and that when the Home finally submitted the reports after being prompted by her personal visit on March 9, 1956, the forms were only half completed. Thereafter, reports for the months beginning with February, 1956, again were not filed.

Miss English also stated that on her visit of March 9, 1956, she made an oral request, followed by a written request dated March 23, 1956, that the Home file special reports concerning (1) all employees who had left the Home's employment between March 9, 1955, and March 9, 1956; (2) medical examinations for certain employees; (3) financial records and credit details; (4) dental records on the children; and (5) records relating to child histories, family backgrounds, and school records. Only the report on medical examinations was shown to Miss English at the time of the visit, and none of the special reports was subsequently filed in accordance with the Department's request.

There was evidence indicating that the Home failed to submit to the Department a complete and accurate listing of its Board of Directors, and that for several years three names had been erroneously included as members of the Board. It also appeared that the Home failed to maintain properly a bound ledger listing all the children under its care. Such ledger is required to be kept on the premises of the Home at all times for

departmental inspection. Miss English testified that the ledger was never produced for her inspection.

In support of the charge relating to the adequacy of the Home's staff Miss English testified that, based upon her study of the situation, there was insufficient staff coverage of the children from March 9, 1955, to the time of refusal to renew the Home's license. In a lengthy letter to the Department Mrs. Budd, president of the Home, stated: "We have been understaffed from time to time. We have had difficulty filling our vacant positions. Who hasn't these days. . . ."

In 1955 the Family Court, to determine whether the Home was satisfactorily operated, ordered all probation officers to review cases committed to the Home. That review indicating a reasonable basis for inquiry, Judge Clayton of the Family Court thereupon ordered Miss Jeanne Hurley, an Assistant State's Attorney to devote two weeks to an investigation of the Home. Miss Hurley submitted her report to Judge Harold O'Connell, the presiding Family Court Judge, and in September, 1955, all of the Family Court wards were removed from the Home and placed elsewhere.

Mrs. Budd, testifying on behalf of the Home, explained the failure to file admission and dismissal cards on the ground that, in her opinion, during months when there were no admissions or dismissals there was no need to file reports. With regard to some of the other reports, she stated that careful records are kept by the Family Court and whatever information the Department desired could have been obtained from that source. She testified that Miss English's visit on March 9, 1956, lasted for almost three hours, and that all the desired information was made available. Mrs. Budd suggested further that it was unnecessary for the Home to repeat facts and information which the Department could have derived from previous reports. In some instances, she added, the addresses of children

311

at the Home were not reported because "the parents called and said not to give the address to the State."

We could extend this opinion with a discussion of further evidence and peripheral issues. However, that seems to us unnecessary. We are of the view that there was substantial evidence to support the findings of the hearing officer that,

> The record in these hearings shows a desire on the part of the department to carry out and fulfill the department's obligation under the statute and shows a desire on the part of respondent [the Home] not to carry out and fulfill the obligations of respondent under the statute. There is evident on the part of the president of respondent a resentment for and a dislike of supervision by the department (and by the Juvenile Home) not only in the fiscal year primarily involved here but over a period of recent years. . . .

Clearly the findings and decision of the Department of Public Welfare are not against the manifest weight of the evidence. The judgment of the Circuit Court is therefore affirmed.

Affirmed.

MURPHY, P. J. and ENGLISH, J., concur.